HENRY M. HOLBROOK *vs.* PATRICK T. JACKSON & another.

It is not necessary to the validity of proceedings in insolvency, instituted on the petition of the debtor, that there should be a formal adjudication by the master in chancery, or commissioner, before issuing the warrant, of the debtor's inability to pay all his debts, of his willingness to assign all his property for the benefit of his creditors, or of the fact that the debts due from him amount to the sum required by the statute.

On the trial of an action, brought by a mortgagee against the assignee in insolvency of his mortgagor, to recover the property mortgaged, in which the defendant undertakes to avoid the mortgage as being made for the purpose of giving an unlawful preference, the admission of the schedules of debts and other papers filed in the proceedings in insolvency, only as evidence that such proceedings were had, and not as evidence of the facts stated in the papers, is no ground for a new trial.

On the trial of an action, brought against the assignee in insolvency of a mercantile firm, to recover property mortgaged by them to the plaintiff, in which the defence is placed on the ground that the mortgage was made with the intention of giving an unlawful preference, and therefore void, the books of account of the firm, verified by the testimony of ⌐ne of the partners, as being in the handwriting of his copartner and of their bookkeeper, and as having been recognized and

Holbrook *v.* Jackson & another.

acted upon habitually by the firm as an authentic and true statement of all their mercantile concerns, are competent evidence for the defendant, for the purpose of showing that they were, and knew themselves to be, insolvent at the time of making the mortgage.

On the trial of a cause, after one party had put in evidence certain books of account, supported by the testimony of the bookkeeper who kept them, the parties agreed to refer the books to an auditor, for the purpose of his stating the results of his examination, on the stand, to the jury, which he accordingly did. It was held, that the admission in evidence of the testimony of the auditor and his report so made, on a subsequent trial of the same cause, after the books had been rightly admitted in evidence, on other testimony than that of the bookkeeper, was no ground for a new trial, although the other party was thereby obliged to call the bookkeeper as his witness.

A mortgage, made by a debtor, who is actually insolvent, and has no reasonable cause to believe himself solvent, to secure a debt to a preëxisting creditor, who has reasonable cause to believe the debtor insolvent, is void, within *St.* 1841, c. 124, § 3, although the debtor at the time of making it sincerely believes himself solvent.

Particular entries, in the books of account of a mercantile firm, offered in evidence for the purpose of showing their insolvency and their knowledge of their condition at the time of making a conveyance to a preëxisting creditor, were objected to by the adverse party, solely on the ground that they were not original entries, nor proved by the clerk who made them. It was held, that the party could not, after the admission in evidence of the books, and a verdict against him, object, on a motion for a new trial, that the most important entries objected to at the trial appeared to have been made after the conveyance in question.

THIS was an action of *indebitatus assumpsit,* for goods sold and delivered, and on the common money counts, and was commenced on the 30th of October, 1847.

The plaintiff filed the following specification of his claim : " The plaintiff claims to recover of the defendants, in this case, the proceeds of the goods, wares and merchandise, mentioned in a certain mortgage deed made by Loring Norcross and Matthew F. Wood to him, dated October 20th, 1846, taken possession of by the defendants, and sold by them ; also interest on all such proceeds from the time when payment was made to them by the purchasers. The said mortgage deed is the same, a copy of which was sent to the defendants by the plaintiff, inclosed in his letter to them, dated January 14th, 1847, claiming the property."

The defendants pleaded the general issue, and filed the following specification of defence : " The defendants will require

12 *

the plaintiff to make out his case in every particular. And for further matter of defence, they will rely upon their being appointed, under the insolvent laws, the assignees of the joint and several estate of Loring Norcross and Matthew F. Wood, to whom the goods, wares and merchandise, the proceeds of which are claimed by the plaintiff, belonged; and upon the mortgage deed, under which the plaintiff claims, being made contrary to the provisions of the said insolvent laws, and with the intent thereby to secure or procure payment of the pre-existing claims and liabilities of the said Holbrook, or the firm of Holbrook, Carter & Co., in violation of the said insolvent laws."

The case was tried in this court, before *Fletcher*, J., from whose report thereof it appeared to be as follows:

The defendants admitted the execution of the mortgage deed, which purported to be given to indemnify the plaintiff against his liability on three promissory notes of Norcross and Wood, of the same date, which, as the deed recited, the plaintiff had indorsed, at their request, for their accommodation. It was proved, that these notes were severally protested for non-payment by the makers, and upon notice to the plaintiff, as indorser, were paid by him.

It was further proved by the plaintiff, that the defendants took possession of the mortgaged property and sold the same, and that after possession taken, and before the sale, the plaintiff, by letter dated January 14th, 1847, gave notice to the defendants, that he claimed the property by virtue of the said mortgage deed, of which he inclosed them a copy.

It was admitted by the defendants, that they had notice of the payment by the plaintiff of the notes mentioned in the mortgage deed, and that after the sale of the mortgaged property, and before the commencement of this action, the plaintiff demanded of them the proceeds of the same, which had come to their hands; and that they refused to pay the same to him.

The defendants offered in evidence the insolvent proceedings before the master in chancery, on the application of Norcross and Wood, which were objected to by plaintiff, but were ad-

mitted. The plaintiff further objected, that the schedules of debts proved before the master were not evidence as against third persons; but all the papers were admitted, only as evidence that such proceedings were had before the insolvent court, and not as evidence of the facts stated. The warrant was in the usual form, requiring the messenger to take possession of all the joint and separate estate, real and personal, of the insolvents, (excepting that by law exempted from attachment,) and of all their deeds, books of account, and papers; and to keep the same safely, until the appointment of an assignee or assignees; and also to give public notice by advertisements, in certain newspapers designated, the first publication to be made forthwith: 1. That this warrant had issued: 2. That the payment of any debts and the delivery of any property belonging to the insolvents, to them or for their use, and the transfer of any property by them, were forbidden by law: 3. That a meeting of the creditors of the insolvents would be held at the master's office, at a time specified, for the proof of debts and the choice of an assignee or assignees. It appearing that there had been no formal adjudication of insolvency, the plaintiff thereupon insisted, that for want of such adjudication, the whole proceedings were void; but the judge ruled, for the purposes of this trial, that no such formal adjudication was necessary. No objection was made by the plaintiff, during the trial, that the defendants were not duly appointed assignees.

To sustain their specification of defence, the defendants relied on the provisions of *St.* 1841, *c.* 124, § 3, and contended that, at the time of the execution of the mortgage to the plaintiff, Norcross and Wood, being insolvent, or in contemplation of insolvency, made the mortgage, intending to give a preference to the plaintiff, for preëxisting debts or liabilities, and that the plaintiff then had reasonable cause to believe that Norcross and Wood were insolvent.

In order to establish these positions, the defendants offered evidence to prove that Norcross and Wood had, for several years, been largely indebted to the plaintiff for money borrowed of him, and that he had been liable as indorser for them to

large amounts, under two agreements, one dated February 9, 1842, the other dated July 29, 1844; that on the 10th of October, 1846, the securities held by the plaintiff did not cover Norcross and Wood's indebtments to him, and his liabilities for them, by a large amount; and that they on that day voluntarily assigned to the plaintiff, as further security, the balances of sundry accounts due to them; that from that date a series of transactions took place between them and the plaintiff, tending to show a contemplation of, and systematic preparation for, insolvency, by the accumulation of securities in the hands of the plaintiff, and the appropriation of large portions of the moneys realized from the said mortgage notes for his benefit; that when the mortgage was executed, Norcross and Wood were largely indebted to other parties than the plaintiff; that he then had in his hands the bulk of their available notes and other receivables; that by then giving the mortgage, they placed in his hands all or nearly all their remaining property of value, and so divested themselves of the means of paying their other creditors.    Other evidence on this point was introduced, but was not reported, as the judge declined to report the case as a verdict against the evidence.

The defendants, to maintain their case, proposed to introduce the books of Norcross and Wood, and, for the purpose of verifying them, offered Matthew F. Wood, one of the firm of Norcross and Wood, who testified, amongst other things, that certain books exhibited to him were in the handwriting of his partner and of Erasmus Norcross, their bookkeeper; and said, " they are the books of our firm; they are the books kept at the store, containing the entries as daily made, and accounts as kept in the course of business."    On cross-examination, he stated that there was an account of profit and loss always kept and entered in the books; that he made no entries therein, and knew nothing of the entries, except that entries were made from day to day, in the course of the business of the firm, and he believed the books were regularly kept; that trial balances were taken yearly, and that he acted on these books as the books of the firm.

The plaintiff objected to the introduction of these books,

but the judge ruled that they were admissible and competent, as tending to show the knowledge of Norcross and Wood of their own condition, and also as tending to show their general state and condition as to solvency or insolvency; the weight of the evidence to be derived from the books, to be determined of course, by the jury, under all the circumstances of the case. In the course of the trial the books were examined and used by both parties, and their contents exhibited and commented on to the jury.

At a former trial of this cause, the defendants, having called Erasmus Norcross, the bookkeeper, as their witness, and put in evidence the books of Norcross and Wood with his testimony, it was agreed between the parties, that one Rogers should take the books and audit certain accounts therein, and state the results on the stand to the jury, which he did; and the defendants now offered the testimony of Rogers and his said report in evidence, which was objected to by the plaintiff, but admitted.   And Rogers exhibited the results of his auditing of said accounts, verified by his testimony, and testified that the counsel and parties, and Norcross, were present, and that he had stated the account from the books of Norcross and Wood.

After the defendants had rested their case, the plaintiff called Loring Norcross, who testified that the books of his firm, which had been introduced, were kept by him or under his immediate instruction and direction, and he believed them all true, and that the schedules in insolvency were made by him therefrom, and that the entries in the books, which had been previously read to the jury, by the defendants' counsel, were true.

The judge instructed the jury that to maintain their defence, the defendants must prove that Norcross and Wood, being insolvent and knowing their situation, and in expectation or anticipation of stopping payment, made the mortgage to the plaintiff, with the intention to give him a preference for pre-existing debts over their general creditors; and that the plaintiff, at the time of taking the mortgage, had reasonable cause to believe that the mortgagors were insolvent; and that if the

defendants established these points, the mortgage was void as against the other creditors.

On the question of intention, the court instructed the jury as follows: " It is maintained, on the part of the plaintiff, that, at the time when this mortgage was made, Norcross and Wood believed themselves to be solvent; that they believed themselves able to pay all their debts, and expected and intended to do so; that they intended and expected to go on with their business, anticipated no failure or stoppage, and had no intention to give a preference to Holbrook; but gave the mortgage in the regular course of business, and as a means of aiding them in carrying it on.  If this was so, if the mortgage was made with no intention to give a preference, but in the regular course of business, the mortgagors expecting and intending to go on, and as a means of going on, the giving of the security, under such circumstances and with such intent, would be valid.  The jury must therefore look to the evidence, and see whether these grounds of the plaintiff were supported by the evidence in the case."  The defendants maintained, that an obviously absurd, or wilfully blind state of mind, wholly inconsistent with actual contemporaneous knowledge of existing facts, brought home to the debtor, would not suffice to disprove an intent to prefer; but the plaintiff insisted, that any sincere belief of the nature referred to, however mistaken, if really entertained, would disprove his intent; and upon this part of the case, the judge, in reference to these positions, left it with the jury to determine, whether, looking at the facts as they actually were at the time, judging as reasonable men, and regarding Norcross and Wood as rational beings, the jury could believe, that at the time they made the mortgage, they could expect to go on with their business, notwithstanding the declaration of Norcross as to his private views and intentions.

A verdict having been rendered for the defendants, the plaintiff moved for a new trial, on the ground that the rulings and instructions of the judge were erroneous.

*R. Choate* and *B. R. Curtis,* for the plaintiff.   1. As it appears from the insolvency proceedings that there had been

Holbrook *v.* Jackson & another.

no formal adjudication of insolvency, and no adjudication of any fact, previous to issuing the warrant; for want of such adjudication the whole proceedings were void, and so the defendants were not duly appointed assignees and had no title as such. *Randall* v. *Barton*, 6 Met. 518; *Commonwealth* v. *Clark*, 2 Mass. 156, and cases there cited by the court; *The King* v. *Pitts*, 2 Doug. 662; *Commonwealth* v. *Cummings*, 2 Mass. 171; *Commonwealth* v. *Egremont*, 6 Mass. 491; *Inhabitants of Pownal*, 8 Greenl. 271; Bac. Ab. Bastardy, A; 2 Chit. Gen. Pract. 203; *The King* v. *Harris*, 7 T. R. 238; 3 Phil. Ev. 1079, 1080; *Starr* v. *Scott*, 8 Conn. 480.

2. The papers, purporting to be schedules of debts proved before the master, were improperly admitted in evidence. They were wholly unimportant for the purpose for which they were admitted, and being permitted to go to the jury, they necessarily had a tendency to satisfy them of the amount of the debts appearing on such schedules, and thus to prove the fact of insolvency by incompetent evidence. 1 Taylor on Ev. 233, 234, 235; Eden on Bankr. Law, 360, and cases cited; Graham on New Trials, 242 to 247.

3. The books of Norcross and Wood were improperly admitted in evidence of their general state or condition of solvency or insolvency, no sufficient evidence having been given of the truth of the entries therein. *Brewster* v. *Doane*, 2 Hill's (N. Y.) Rep. 537; *Baker* v. *Briggs*, 8 Pick. 122; Eden on Bankr. Law, 360; 1 Greenl. on Ev. §§ 115, 120; *Doe* v. *Turford*, 3 B. & Ad. 890. The fact that the plaintiff afterwards called the bookkeeper, and that he swore to the truth of the entries, does not cure the objection, the defendants having been enabled to make a *primâ facie* case by incompetent evidence and thus avoid calling Norcross as their witness. In *Davis* v. *Mason*, 4 Pick. 156, a new trial was granted because the opening and close before the jury were assigned to the party not entitled to it.

4. The testimony and report of Rogers were improperly admitted. Their previous admission by the consent of the parties was in a different trial, and on a different state of facts

5. On the question of the intention of Norcross and Wood

to give a preference, the jury should have been instructed substantially as requested by the plaintiff. *Jones* v. *Howland*, 8 Met. 377; *Vacher* v. *Cocks*, 1 B. & Ad. 145; *Green* v. *Bradfield*, 1 Car. & K. 449. Sufficient instructions were not given on this point to enable the jury to decide it according to law.

6. It was necessary to show knowledge and consent on the part of the plaintiff in order to avoid this mortgage. That the plaintiff had reasonable cause to believe Norcross and Wood insolvent was not sufficient, the transaction on its face not being a preference, nor for a preëxisting debt, but lawful. *Baxter* v. *Pritchard*, 1 Ad. & El. 456; *Cook* v. *Caldecot*, 4 Car. & P. 315; *Gibson* v. *King*, Car. & Marshm. 458; *Harwood* v. *Bartlett*, 8 Scott, 171.

*C. G. Loring* and *S. Bartlett*, for the defendants.

SHAW, C. J. The first objection taken by the plaintiff is, that it does not appear, by the insolvent proceedings, that there was any adjudication, made by the master, of the truth of the facts stated in the petition of the insolvents, previously to the issuing of the warrant; that the proceedings were consequently void, and the defendants fail to establish their title as assignees.

It will be understood that these were not proceedings *in invitum*, commenced by creditors, but a voluntary proceeding of the debtors on their own petition. The act provides, *St.* 1838, *c.* 163, § 1, that any debtor residing in this commonwealth, who shall desire to take the benefit of the insolvent act, may apply by petition to the judge of probate, setting forth his inability to pay all his debts, and his willingness to assign all his estate and effects for the benefit of his creditors, and praying proceedings; and if it shall appear to the satisfaction of the judge, that the debts due from the applicant amount to not less than $500, (since reduced to $200) the said judge shall forthwith, by warrant under his hand and seal, appoint a messenger, to take possession of all the property of the debtor. The desire of the debtor, his inability, and his willingness to assign, are all proved by the petition. But the judge is to be satisfied, that he owes $200. How? The statute gives no direction. But it is manifestly to be a

summary proceeding, because he is forthwith to issue his warrant. It is clearly not a hearing on notice, as between adverse parties. It must be on evidence satisfactory to the judge. The warrant is to issue before the appointment of a clerk; of course there can be no record, in the proper sense of the term, entered by a clerk, until after the issuing of a warrant. If entered at all, it must be done afterwards, from minutes furnished or direction given by the judge. *Randall* v. *Barton,* 6 Met. 518. But the warrant could not issue, unless he was satisfied of the existence of the debt required. *Commonwealth* v. *Bolkom,* 3 Pick. 281. The issuing of the warrant, therefore, with its statements and recitals, by necessary implication, amounts to an adjudication of his satisfaction; and the statute has prescribed no form. There being no law, no binding precedent, and no settled practice in regard to the form, we think this sufficient. It is admitted that there is no case in point, but it is argued, that it is within a principle adopted in analogous cases. The cases cited are mostly those of summary convictions in criminal proceedings before justices, where, as the accused is deprived of a trial by jury, the utmost nicety is required; or cases on the bastardy or highway acts, governed by the terms of particular statutes. The case of *The King* v. *Harris,* 7 T. R. 238, was a summary conviction before justices, on a statute, for shooting at hares. Without referring to the cases in detail, which have all been examined, they will be found to be generally upon statutes regulating adversary proceedings, where an adjudication, as 'that of filiation, or common convenience and necessity, is made the basis of other proceedings. So far as the rights of the insolvents and all others in privity with them are concerned, the petition itself is conclusive; for *volentibus non fit injuria.* As to others, the statement and recital in the warrant are *primâ facie* sufficient; and if an attaching creditor, or other person affected, is in danger of suffering, he has a remedy in a summary application to this court. How this would stand in case of an adversary proceeding by creditors, against an insolvent debtor, we give no opinion.

The next question arises from an objection to the docu

ments and proceedings in insolvency, including the schedules filed by the insolvents, which were offered by the defendants, objected to, but admitted.

Under the restrictions with which the admission of these papers was accompanied, it appears to us that they were not objectionable, though not of much importance. They were offered and admitted, not on account of the schedules, but as a whole, as evidence of the regular commencement, prosecution and course of the insolvent proceedings, on which the authority of the defendants, as assignees, was founded, and for no other purpose. For this purpose we think they were competent, though perhaps not necessary.

The next point insisted on by the plaintiff was, that the books of Norcross and Wood were improperly admitted as evidence of the general state and condition, as to solvency or insolvency, of Norcross and Wood; no sufficient evidence having been given of the truth of the entries therein by the testimony of those who made them. As this is a point strongly and perhaps principally relied on, it seems necessary to state it somewhat particularly. [Here the chief justice stated the testimony of Wood, and the ruling of the judge thereon, as *ante*, 140, 141.]

In order to decide the question, whether these books were competent evidence, it seems proper to consider the nature of the issue to be proved. This mortgage was made not long before the commencement of proceedings in insolvency under the statute upon the voluntary application of the debtors. In order to invalidate this mortgage, and maintain the defence, under *St.* 1841, *c.* 124, § 3, which was then in force, it was necessary to show that the mortgagors, Norcross and Wood, either being in fact insolvent, or in contemplation of proceedings in insolvency under the statute, made the mortgage to Holbrook, intending to give him a preference, as a preëxisting creditor. This would render the mortgage void, unless the debtors had reasonable cause to believe themselves solvent, and provided that Holbrook, in accepting such preference, had reasonable cause to believe that Norcross and Wood were insolvent.

These were the facts to be proved; and the court are of opinion, that for this purpose, and to the extent to which these books were admitted, they were competent evidence. It appears to us, that the admission and the authentication of books, under these circumstances, depend on rules distinct from those which regulate the admission of a party's own book of original entries, verified by his oath, to prove items of book debt. They are admitted on a different principle, and are to be proved in a different manner. *Union Bank* v. *Knapp*, 3 Pick. 96. The insolvent law requires that all the books of account of the debtors shall be delivered to the messenger, and the debtors are compellable to disclose and surrender them, and they are placed in the hands of the assignee. This of itself would not make them legal evidence as against third persons; but it certainly manifests the intention of the law, that the assignee shall be furnished with all the knowledge of the affairs of the insolvents, which their books of account will afford him, and shall be enabled to use them as evidence, upon occasions and between parties, when, upon proper grounds, they are admissible. The court are of opinion that this was such an occasion.

It appears by the evidence, which was in when this decision of the court was made, admitting the books as competent, that they comprised the entire set of account books kept by the firm, in the usual course of their business, by one of the partners, and a bookkeeper retained for the purpose; that they were believed to be correct, and were recognized and acted upon habitually by the partners, as exhibiting an authentic and true statement of all their mercantile concerns. The decision, admitting these books generally, was made after objections taken by the plaintiff to the proof of several particular entries successively, on the ground either that they were not original entries, or that they could only be proved by the clerk who made them. Among the facts to be proved, were the actual insolvency of the mortgagors, or the reverse; whether they had or had not reasonable grounds to believe themselves solvent; and whether the mortgagee had or had not reasonable grounds to believe them insolvent. The

knowledge, intent and purpose, and the reasonable grounds of belief of one party, may be proved by evidence drawn from one source, and those of the other party from another. Such is the old and established rule, in the trial of the question of a fraudulent conveyance, void as against creditors. *Bridge* v. *Eggleston*, 14 Mass. 245; *Foster* v. *Hall*, 12 Pick. 89. To prove the state of the firm as to solvency, their knowledge and belief respecting it, and the reasonable grounds which they had or had not to believe themselves solvent, the books of the firm were competent evidence; and the proof that they were kept as books of account are usually kept by mercantile houses, and were recognized and acted upon by them as exhibiting a true and correct state of their affairs, was sufficient proof of authentication for that purpose.

The next objection was to the testimony of Rogers. [The chief justice here quoted what is stated in the report, about the testimony of Rogers, *ante*, p. 141.] Had the books been rejected on this trial, we should have thought that the parties would not be bound by an assent formerly made upon the assumption that the books themselves were competent. The object was not to introduce a new substantive species of evidence, but to facilitate access to the contents and results of the books, as evidence. But as these books were admitted again on the present trial, though objected to, and were admitted, as we now think, rightly, we are of opinion that the testimony of the auditor, and his report, made under the former rule, entered into by consent of parties, were properly admitted. It was made in the same cause, for the same purpose, namely, to aid the jury in getting at results from the books. It is, we think, within the spirit of Rev. Sts. *c.* 96, § 25, authorizing the court, whenever it shall appear that the trial of a cause will require an investigation of accounts, to appoint an auditor.

Some exception was taken to the instruction given by the court to the jury. The judge directed them that, to maintain the defence, the defendants must prove that Norcross and Wood, being insolvent and knowing their situation, and in expectation or anticipation of stopping payment, made the

mortgage to the plaintiff, with the intention to give him a preference for preëxisting debts, over their general creditors, and that the plaintiff had reasonable cause to believe them insolvent; that if the defendants established these facts, then their mortgage was void, as against the other creditors. This charge was sufficiently favorable to the plaintiff, and in some respects too much so, as we do not think it necessary, in order to avoid the conveyance, that the debtors knew that they were insolvent, or in fact contemplated proceedings in insolvency; it is enough that they were in fact insolvent, and had no reasonable ground to believe themselves solvent. The position contended for by the counsel for the plaintiff was, that, at the time the mortgage was made, Norcross and Wood believed themselves solvent, able to pay all their debts, and expected and intended to go on with their business, anticipated no failure or stoppage, and had no intention to give preference to Holbrook, but gave the mortgage in the regular course of business, and as a means of enabling them to carry it on; and so the mortgage was good. The court directed the jury that if the mortgage was made with no intention to give a preference, but in the regular course of business, expecting and intending to go on, and as a means of going on, the security given under such circumstances, with such intent, would be valid. The court are of opinion, that the residue of the plaintiff's position, for reasons already given, was not tenable, and that an instruction conformable to it would not have been correct. The counsel for the defendants had maintained that an obviously absurd or wilfully blind state of mind, wholly inconsistent with actual contemporaneous knowledge brought home to the debtor, would not suffice to disprove an intent to prefer; but the plaintiff's counsel insisted, that any sincere actual belief of the nature referred to, however mistaken, would disprove such intent; and the court, in reference to these positions, left it with the jury, saying that they must decide, whether, looking at the facts as they actually were at the time, judging as reasonable men, and regarding Norcross and Wood as rational beings, the jury could believe, that, at the time they made the mortgage, they could expect to go on with their busi-

13 *

ness, notwithstanding the declaration of Norcross, of his private views and intentions. These latter remarks appear to be a comment on the evidence, a portion of which, the testimony of Norcross, is not given. As such comment, they are not objectionable; but we think the position insisted on by the plaintiff, that although actually insolvent, and although they had no reasonable ground to believe themselves solvent, against the fact, yet a sincere belief that they could go on, however groundless, and an intention to do so, would save the conveyance from being held invalid, cannot be maintained as law, under the existing statute. The provision of the bankrupt law of the United States, under which the case of *Jones* v. *Howland*, 8 Met. 377, was decided, was very different from the present; it turned upon the question of actual belief and intent, and not on reasonable ground to believe.

On the whole, the court are of opinion that the objections taken by the plaintiff to the proceedings at the trial are untenable, and that judgment be rendered on the verdict.

After this opinion was given, the counsel for the plaintiff requested that the entry of judgment might be delayed a short time, so that they might be heard further on a point not noticed by the court in the foregoing opinion; and this request was granted by the court.

*R. Choate* and *B. R. Curtis*, for the plaintiff, now contended that a new trial ought to be granted, because the defendants were allowed to read to the jury, as evidence of the facts stated therein, entries from the books of Norcross and Wood, made *after* the execution of the mortgage in question, showing payments and receipts of money by Norcross and Wood *after* the execution of the said mortgage; Norcross himself, who made the entries, being living and within the reach of process, and a competent witness. *Bridge* v. *Eggleston*, 14 Mass. 245; *Foster* v. *Hall*, 12 Pick. 89; *Phœnix* v. *Dey*, 5 Johns. 426; *Clarke* v. *Waite*, 12 Mass. 439; *Doe* v. *Webber*, 1 Ad. & El. 733; *Augusta* v. *Windsor*, 1 Appleton, 321; *Nicholls* v. *Webb*, 8 Wheat. 326; *Watts* v. *Howard*, 7 Met. 481.

*C. G. Loring* and *S. Bartlett*, for the defendants.

SHAW, C. J.   The facts to be proved, to invalidate the mort-
gage and sustain the defence, were these ; that the mortgagors,
Norcross and Wood, being insolvent or in contemplation of
insolvency, made the mortgage to Holbrook, the plaintiff,
intending to give him a preference as a preëxisting creditor;
and thus avoiding the mortgage, under *St.* 1841, *c.* 124,
§ 3, unless the said debtors had reasonable cause to believe
themselves solvent, and *provided* said Holbrook, in accept-
ing such preference, had reasonable cause to believe that they
were insolvent.   The facts to be proved on the part of the
defendants, to avoid the mortgage were, 1. That said debtors
were in fact insolvent; 2. That they had no reasonable cause
to believe themselves solvent; and 3. That Holbrook had
reasonable cause to believe them insolvent.   It must be actual
insolvency without reasonable *cause to believe* themselves
solvent; not actual belief of their insolvency, on the part of
the mortgagors.   It must be reasonable cause, on the part of
the mortgagee, to believe; not actual knowledge or actual
belief, that they were insolvent.   The issue on the part of the
defendant was to prove these facts; on the part of the plaintiff
to resist and repel the proof of them.

A great part of the proof of these facts must bear upon
the point of knowledge, intention and reasonable ground of
belief, to be inferred by the jury from a broad and comprehen-
sive view of the course of business of the debtors, and
especially from the course of dealings between these parties.
Their mercantile transactions for a course of years were in-
volved in the inquiry.   A great amount of evidence 'upon
these points was introduced, some of which, it appears by the
report, is not stated.

The defendants, to maintain the issue on their part, pro-
posed to introduce the books of Norcross and Wood, and, to
verify them, offered the testimony of Wood.   He testified
that the books produced were the regular books of their firm,
kept by his partner and a bookkeeper, that they contained the
daily entries of their business, that he believed them to be
regularly kept, and that he acted on these books, as the books
of the firm.   The plaintiff·objected to the books, but the court

ruled that they were competent and admissible; 1. To prove the general state and condition of the firm, as to solvency or insolvency, and 2. As tending to show the knowledge of Norcross and Wood of their own condition. Other evidence was offered, other objections taken and points reserved, and instructions were given under which the case went to the jury, which we have already had occasion to consider, and have thought them sufficiently favorable for the plaintiff.

But the sole question now arises from the admission of the books. In the opinion heretofore given in this case, the court held that the books were competent evidence for the purpose for which they were offered, without bringing home the knowledge of them to the other party, and cited some authorities to that effect. The court were then informed that they had overlooked an important and material consideration, to wit, that although the books would be competent evidence of the knowledge and purpose of the mortgagors at and before the time of the conveyance, they could not affect the validity of the title, which they had already given, by any entries in their books, or other acts or declarations done without the knowledge of the mortgagee. As there was no time then to examine the subject, the clerk was directed to postpone the entry of judgment. If we had done injustice to any party, by overlooking a material fact, or mistaking any principle of law, we should be most anxious to avoid it; but in our anxiety to avoid injustice to one party, we must take care not to do injustice to another.

It is now stated by the counsel for the plaintiff, that the most important part of the evidence derived from these books was drawn from entries made after the conveyance in question; and although the acts and the declarations of the mortgagors, at the time of the conveyance, may be good evidence of their intent and purpose, yet that acts and declarations, done and made afterwards, could not be admitted to invalidate their previous conveyance. Before considering the question, it becomes necessary to inquire whether any exception, founded on the distinction between entries made *before* and those made *after* the conveyance, was taken at the jury trial,

or in the argument on the report. The question is, whether the defendants were permitted by the authority and direction of the judge, and against the objection of the plaintiffs, to read these after entries.

We have looked at the report again, with great care, and we see no other objection than that which was made generally to the books, as books of account. This objection was overruled, and we thought, when the case came before the whole court, properly ; they were received for the purpose of proving a knowledge of the mortgagors, of their own affairs. We thought it was right; for though Wood said he did not keep the books, yet the books were their regular books, kept under their direction; they annually took a trial balance, and kept an account of profit and loss. Every merchant must be presumed to know, and in fact, from his balance sheet and books generally, does know, the state of his concerns. This was the objection, and this was the decision upon it.

But it was suggested when this motion was made, and has been stated to us now, that the objections of the defendant's counsel went further, and the ruling of the court upon them went further, than is stated in the report. We have listened to these statements with an earnest desire to ascertain whether, by any amendment of the report or in any other mode, the plaintiff could have the benefit of an exception actually taken and overruled, but which through inadvertence does not appear in the report. From these statements we are led to believe that, after the ruling of the judge that the books were admissible, and when a witness was called to a particular entry, it was objected that it could only be proved as an original entry and by the clerk who made it, as if the case were within the rules applicable to shop books, used as proof of a debt. But the grounds on which the books were held admissible overlooked these distinctions, and placed the case on a distinct ground, which was, that for the purpose for which they were admitted, they were equally competent, whether the particular entries were made by one person or another, whether original entries or ledgers, journals, balance sheets, or other secondary books, drawn from the original entries. This objection having

been made to particular entries more than once, and overruled, the judge stated that the books generally were competent and admissible, and no further objection was made.

Now, as we understand it, this did not alter or change the rule previously given, as to the object and purpose for which the books were admissible, but only went to the extent that all the entries in all the books were equally admissible, without regard to their being original, and without regard to the person who made them. If it had been intended to make objection to particular entries, on another and distinct ground, to wit, that they tended to prove the acts and declarations of the grantors, at a time when they could not by their acts or their intentions impair the title which they had given, this should have been made the subject of a distinct objection. Had the attention of the judge been called distinctly to the point upon which such an objection could be well taken, the evidence of entries subsequent to the mortgage might have been rejected, and the proof from the books confined to those entries, which were unobjectionable on that ground; and if the evidence ought to have been so limited, it must be presumed that the evidence would have been allowed to go no further. Or had this specific objection been taken, the counsel for the adverse party might have waived the introduction of the objectionable entries, or supplied them by other evidence. Every one feels how important it is, upon every account, that all such exceptions should be specific and made at the trial, where they may be acted upon or avoided.

Some very significant remarks of Lord Holt, upon this subject, are found in the case of *Wright* v. *Sharp*, 1 Salk. 288. It was a motion to have exceptions allowed after the trial. Lord Holt said : " You should have insisted on your exception at the trial ; you waive it if you acquiesce, and shall not resort back to your exception after a verdict against you, when perhaps, if you had stood upon your exception, the party had other evidence, and need not have put the cause upon this point." A similar case came before this court recently *Howard* v. *Hayward*, 10 Met. 408. Exceptions were taken to the records of a proprietary, on the ground that owners of

a lot of land and the meeting-house thereon were not such tenants in common as were authorized by the statute to incorporate themselves as a proprietary; but the objection was overruled, and the books admitted, with liberty to refer to them in the argument. It was insisted on the argument, that the proprietors did not organize themselves agreeably to the statute, and that this would appear by the records, thus made part of the case. But, said Mr. Justice Wilde, delivering the opinion of the court, " we think these objections are not now open on this bill of exceptions. The objections should have been specifically made at the trial, when the defects in the record might have been supplied by other evidence."

We cannot perceive, even by the statements of counsel, independently of the report, that this objection to entries, made in the debtors' books after the conveyance, was specifically made at the trial, and we are confirmed in the belief that it was not, by the fact, that, as far as the recollection of any of us goes, the cause was not argued on that ground, when the case first came before the full court, nor was it suggested until after the opinion was given. Nor does it appear that any material proof was derived from such entries, which could not have been supplied by other evidence.

On the whole, the court are of opinion, that none of the objections to the verdict can be sustained, and that there must be judgment thereon for the defendants.